### 66238. DEPARTMENT OF TRANSPORTATION v. WHITEHEAD.

POPE, Judge.
This is a condemnation case in which the Department of Transportation (DOT), as condemnor, filed petition to take for public purposes a portion of property belonging to condemnee Cecil S. Whitehead, Jr. located at the corner of 19th Street and Peachtree Street near Pershing Point in Atlanta. Although the subject property has a West Peachtree Street address, part of that frontage is on Peachtree Street; West Peachtree Street and Peachtree Street merge at Pershing Point. The property condemned consisted of 5,540 square feet, taken from a total of 37,774 square feet, and constituted condemnee's entire road frontage on Peachtree/West Peachtree Street. DOT also acquired an adjoining temporary construction easement of 2,549 square feet of the remaining property. These takings were in connection with the construction of an entrance ramp to what will be the Buford Highway Connector (a limited-access highway) across the entire Peachtree/West Peachtree Street frontage of condemnee's property. There will be no vehicular access from condemnee's remaining property directly onto the ramp or onto Peachtree/West Peachtree Street after the ramp has been constructed; pedestrian access will continue. Upon completion of the ramp's construction, 19th Street will be permanently closed at its intersection with Peachtree Street, although access to the property will continue via 19th Street from Spring Street.

The jury returned a verdict in favor of condemnee in the amounts of $55,400 as the value of the property taken; $8,500 as the value of the easement taken; $67,000 as consequential damages to the remaining property with no consequential benefits to the remaining property. From the judgment entered upon this verdict and the denial of its motion for new trial, DOT brings this appeal.

1. DOT's first enumeration cites as error the trial court's admitting evidence concerning circuity of travel and general inconvenience to those using condemnee's property due to the closing

of 19th Street at Peachtree Street. Before the taking condemnee's property was a corner lot with frontage on both Peachtree/West Peachtree Street and 19th Street. Condemnee had direct unobstructed access to both streets, although the Peachtree/West Peachtree frontage was six feet above the grade of the street, and the only vehicular access provided and utilized was a driveway and parking lot located on the western portion of the property off of 19th Street. Vehicular access to 19th Street was available from either Spring Street or Peachtree/West Peachtree Street (both two-way streets). The actual taking by DOT was a strip of condemnee's property along the entire Peachtree/West Peachtree frontage and a portion of the 19th Street frontage at its intersection with Peachtree Street. The construction proposed as of the date of taking as it relates to the property taken was shown by certain exhibits and related testimony tendered into evidence by DOT without objection. This evidence showed that a portion of an entrance ramp to the Buford Highway Connector would be constructed on the property taken. As a result of this construction, vehicular access to condemnee's remaining Peachtree/West Peachtree Street frontage would be entirely eliminated. In addition, 19th Street would be closed at Peachtree Street, leaving Spring Street as the only remaining route by which vehicular access would be available to 19th Street and, thus, to condemnee's property. The evidence also showed that West Peachtree Street would become one-way north and Spring Street would become one-way south. As a result of this evidence, condemnee was allowed to present the evidence complained of which related to the circuity of travel and inconvenience to those attempting to use the remaining property resulting from the proposed construction. The construction was projected to be completed in three to six years.

"It is an elementary rule that the State must pay for property taken for a public purpose. [Cit.] The amount of damages shall include not only the value of the property taken, but shall also compensate for the consequential damage to the remaining property not taken. These consequential damages result from the actions of the State in severing a portion from the body of the condemnee's land and in interfering with his use and enjoyment of the remaining property. [Cit.] The consequential damage is damage that is specially suffered by the condemnee not suffered by the public in general. [Cits.]" *State Hwy. Dept. v. Irvin,* 100 Ga. App. 624, 626 (112 SE2d 216) (1959). The thrust of DOT's argument here is that the proposed closing of 19th Street at Peachtree Street and the proposed changes in the traffic patterns on Spring and West Peachtree Streets were damages suffered by all members of the general public and that condemnee's damages therefor differed only in degree from those

suffered by the general public. Thus, DOT contends, condemnee suffered no damage special to him alone. Indeed, "[a] damage suffered by the condemnee which is different from that suffered by the general public in degree only, and not in kind, is not compensable or recoverable. [Cits.]" *Dougherty County v. Snelling,* 132 Ga. App. 540, 544 (208 SE2d 362) (1974), overruled on other grounds, *Zuber Lumber Co. v. City of Atlanta,* 237 Ga. 358, 365 (227 SE2d 362) (1976).

However, "[t]he owner of land abutting a street has an easement in the street, which includes the use of the street for the benefit of the land, including the right of ingress to and egress from the land. The owner's right is one peculiar and distinct to his lot, and differs from the right of the community in general to the use of the street. [Cits.]" *Felton v. State Hwy. Bd.,* 47 Ga. App. 615, 616-7 (171 SE 198) (1933). " 'This easement of access is a property right, of which the landowner can not be deprived . . . without just and adequate compensation being first paid to the owner. Under its power and discretion in the location, construction, and maintenance of State-aid roads, the State Highway Board [now DOT] can not deprive the owners of land abutting thereon of their easement of access, without first paying to such owners just and adequate compensation therefor.' [Cits.] 'In all cases, to warrant a recovery it must appear there has been some direct physical disturbance of a right, either public or private, which the [owner] enjoys in connection with his property, and which gives to it an additional value, and that by reason of such disturbance he has sustained a special damage with respect to his property, in excess of that sustained by the public generally . . . The damages . . . that an individual may recover for injuries to his property need not necessarily be caused by acts amounting to a trespass, or by an actual physical invasion of his real estate; but *if his property be depreciated in value by his being deprived of some right of [use] or enjoyment growing out of and appurtenant to his estate as the direct consequence of the construction and use of any public improvement, his right of action is complete, and he may recover to the extent of the injury sustained* . . . Accordingly, it has been held that interfering with access to premises, by impeding or rendering difficult ingress or egress, is such a taking and damaging as entitles the party injured to compensation under a provision for compensation where property is damaged.' [Cits.]" (Emphasis supplied.) *Dougherty County v. Hornsby,* 213 Ga. 114, 116-7 (97 SE2d 300) (1957); see also Cheek v. Floyd County, Ga., 308 FSupp. 777, 780-1 (N. D. Ga. 1970).

Prior to the taking condemnee had an easement of access to and from Peachtree/West Peachtree Street, although vehicular access via this frontage was not being utilized as the frontage was six feet above

grade. As a result of the taking, vehicular access via the Peachtree/West Peachtree Street frontage had been completely eliminated and, as a result of the proposed construction, the remaining property would be at grade. Moreover, direct access to Peachtree Street via 19th Street would be cut off as a result of the proposed closing of 19th Street at Peachtree. " '[O]ne whose right of access from his property to an abutting highway is cut off or substantially interfered with by the vacation or closing of the road has a special property which entitles him to damages.' " *Tift County v. Smith,* 219 Ga. 68, 73 (131 SE2d 527) (1963); see also *Valley View Church &c. v. Atlanta Housing Auth.,* 157 Ga. App. 6 (276 SE2d 71) (1981).

Condemnee was entitled to prove every element of consequential damage that was relevant. See *State Hwy. Dept. v. Morton,* 104 Ga. App. 106 (121 SE2d 275) (1961). "The fact that the State has cut off access to property hinders the condemnee's use and enjoyment of the property. The evidence showing the inconvenience to the landowner because of the added distance to travel not only to his adjoining neighbors, but to neighboring markets and towns, is not immaterial and irrelevant. It relates to the precise issue being tried, i.e., damage to the property, in that it tends to establish the landowner's right to recover damages resulting from his property being cut off from direct routes to certain places." *State Hwy. Dept. v. Irvin,* supra at 626. Under the circumstances in this case, the trial court did not err in admitting the evidence objected to since that evidence was relevant and material to the issue of consequential damages to condemnee's property remaining after the taking. Cf. *Dendy v. MARTA,* 163 Ga. App. 213 (4) (293 SE2d 372) (1982), revd. on other grounds, *MARTA v. Dendy,* 250 Ga. 538 (299 SE2d 876) (1983). The decisions relied on by DOT — *Tift County v. Smith,* supra; *Dougherty County v. Snelling,* supra; and *State Hwy. Dept. v. Cantrell,* 119 Ga. App. 241 (3) (166 SE2d 604) (1969) — do not require a different result.

2. DOT assigns error to the trial court's charge concerning the compensability of interference with access. However, the charge complained of was a correct statement of the law (see *Wright v. MARTA,* 248 Ga. 372, 375 n. 7 (283 SE2d 466) (1981)), was not a comment on the evidence, and, in light of our holding in Division 1 of this opinion, was authorized by the evidence. As to this same charge, DOT also complains that it authorized a recovery in addition to the market value of the property taken and the consequential damages to the remainder. Our review of the charge as a whole does not support this allegation. See generally *State Hwy. Dept. v. Davis,* 129 Ga. App. 142 (1) (199 SE2d 275) (1973). Moreover, since the charge complained

of does not amount to a substantial error as a matter of law (see OCGA § 5-5-24 (c) (Code Ann. § 70-207)) and the objection raised here was not made to the trial court, it presents no ground for reversal. See *Bone Constr. Co. v. Lewis,* 148 Ga. App. 61 (3) (250 SE2d 851) (1978).

DOT also assigns as error the trial court's refusal to give four of its requests to charge. Again, however, in light of our holding in Division 1, the trial court did not err in refusing to give these charges as they were not applicable to the issues raised by the evidence. See *DOT v. Delta Machine Prods. Co.,* 157 Ga. App. 423 (1) (278 SE2d 73) (1981).

3. DOT cites as error the trial court's denial of its motion to strike that portion of the testimony of Julian Diaz, Jr. (an expert witness for condemnee) concerning consequential damages to condemnee's property. The motion to strike was made after both parties had rested (but before the case had been submitted to the jury) and two days after the testimony had been given; DOT made no objection to the testimony at the time it was proffered. In the meantime, condemnee had called another witness and DOT had called three rebuttal witnesses. Condemnee argues that the motion to strike was not timely. However, "by allowing evidence to be introduced without objection, a party does not lose the right to move to have the evidence excluded at any time before the case goes to the jury. [Cits.]" *Graham v. Clark,* 114 Ga. App. 825, 828 (152 SE2d 789) (1966). Therefore, DOT's motion to strike was timely.

The basis for the motion to strike was that Mr. Diaz, in forming his opinion as to consequential damages, improperly assumed that the proposed road improvements were completed immediately after the time of the taking. The Supreme Court has recently held: "The proper measure of consequential damages to the remainder is the diminution, if any, in the market value of the remainder in its circumstance just prior to the time of the taking compared with its market value in its new circumstance just after the time of the taking." *Wright v. MARTA,* supra at 376. However, the court stated: "We do not mean to imply in this opinion that evidence illustrating future benefits or damages would not be admissible to help establish a value just after the [time of the] taking." Id. at 375 n. 8. The record here discloses that Mr. Diaz did not have an accurate understanding of the concept required to correctly establish the amount of consequential damages to the remainder of condemnee's property. Nevertheless, the trial court did not err in denying DOT's motion to strike as "the matter concerned the weight and the credibility of the witness' testimony which was for the jury to determine." *DOT v.*

*Turner,* 148 Ga. App. 354, 355 (251 SE2d 182) (1978).

4. DOT next challenges the admission into evidence of certain documents and testimony concerning a study done by a traffic engineer on behalf of condemnee. This study related to traffic conditions in the area around condemnee's property as of the date of taking and future traffic conditions in the year 2000. The evidence was based in part on documents relating to the proposed construction prepared and tendered as evidence by DOT; condemnee did not object to the admission into evidence of DOT's documents. The thrust of DOT's objection at trial was that this evidence was not relevant because it contained information pertaining to a point after the date of taking.

Although the study was conducted approximately one year after the date of taking, the traffic engineer (qualified as an expert witness) testified that the circumstances at the time of the study were exactly the same as on the date of taking except for some unrelated construction by MARTA along West Peachtree Street. The focus of the study was the construction proposed by DOT and its likely impact on condemnee's property. "Evidence which, in connection with other evidence, tends, however slightly, to prove, explain, or illustrate a fact, even though it is not sufficient, standing alone, to sustain a finding of such fact, is relevant, has probative value and is admissible as against objection as to its relevancy and probative value; doubt as to the latter should be resolved in favor of admission and against exclusion, sufficiency not being a test or condition of admissibility. [Cits.]" *Hardwick v. Price,* 114 Ga. App. 817, 818 (152 SE2d 905) (1966); *Lewis v. State,* 158 Ga. App. 586 (1) (281 SE2d 331) (1981); *DOT v. Delta Machine Prods. Co.,* supra at (1). The trial court did not abuse its discretion in admitting the evidence here complained of.

5. Any remaining enumerations of error not covered specifically in the first four divisions of this opinion have been examined and found to be without merit.

*Judgment affirmed. Quillian, P. J., and Sognier, J., concur.*

DECIDED NOVEMBER 14, 1983 —
REHEARING DENIED DECEMBER 6, 1983 —

*J. Matthew Dwyer, Jr., Michael J. Bowers, Attorney General, Robert S. Stubbs, Executive Assistant Attorney General, Marion O. Gordon, First Assistant Attorney General, Roland F. Matson, Senior Assistant Attorney General, John R. Strother, Jr., Thomas C. Dempsey, Beryl H. Weiner,* for appellant.

*Harry L. Cashin, Jr.,* for appellee.